UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
LORETTA TEMPLE,

                    Plaintiff,                          **MEMORANDUM & ORDER**
                                                        06-CV-2162 (RRM) (CLP)
        - against -

THE CITY OF NEW YORK and
FRANK CIMINO,

                    Defendants.
-------------------------------------------------------X
MAUSKOPF, United States District Judge.


        Plaintiff Loretta Temple commenced this action against the City of New York and Frank

Cimino (collectively, "Defendants"),[1] alleging employment discrimination in violation of Title

VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, and 42 U.S.C. §

1981. Before the Court is Defendants' motion for summary judgment pursuant to Federal Rule

of Civil Procedure 56. For the reasons that follow, Defendants' motion is GRANTED in part

and DENIED in part.

## FACTUAL BACKGROUND

        The following facts are either undisputed or set forth in the light most favorable to

Plaintiff, the non-moving party.[2]

---

[1] For the reasons discussed *infra*, the Clerk of Court is directed to amend the caption to substitute the New York City Department of Education for the City of New York as Defendant.

[2] The Court notes that the Local Rule 56.1 Statement submitted by Plaintiff failed to comply with the Local Rules. Specifically, the paragraphs in Plaintiff's Statement did not correspond to those in the Rule 56.1 Statement submitted by Defendants, the moving parties. *See* Local Civil Rule 56.1(b). A district court, however, "has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001); *see also Rateau v. City of New York*, No. 06-CV-4751, 2009 WL 3148765, at *1 n.1, 2009 U.S. Dist. LEXIS 90112, at *2 n.1 (E.D.N.Y. Sept. 29, 2009) (exercising the court's discretion to review the admissible record evidence in determining whether proposed undisputed facts were

**A. The Integration Transfer Program and Plaintiff's arrival at P.S. 193**

Plaintiff, who self-identifies as African-American, worked as a public school teacher for the Board of Education of the City School District of the City of New York ("DOE") for over twenty years until her employment was terminated in 2006. Prior to the 2003 school year, Plaintiff transferred from Public School ("P.S.") 332 to P.S. 193 pursuant to an "Integration Transfer Program (the "ITP")," which permitted qualified teachers to transfer into schools that had failed to comply with DOE guidelines for staff integration. Prior to Plaintiff's arrival at P.S. 193, only two African-American teachers where employed at the School. It is undisputed that Plaintiff, who in addition to nearly two decades of teaching experience also possesses two graduate degrees, was qualified for her transfer to P.S. 193. At P.S. 193, Plaintiff applied for a position teaching the second grade. However, Frank Cimino, the Principal at P.S. 193, who self-identifies as Caucasian, offered Plaintiff a position teaching an English-as-a-Second-Language ("ESL") course. Plaintiff accepted Cimino's offer.

**B. Plaintiff's conflicts with others at P.S. 193**

*1. Racially insensitive discussions in faculty lounge*

Plaintiff testified that, at the beginning of the 2003 school year, she overheard a racially insensitive conversation among a group of Caucasian teachers in the teachers' lounge at P.S. 193. Plaintiff claims that the teachers were complaining that groups of ethnic minorities— specifically, individuals of Pakistani and West Indian descent—were pushing Italian-American residents out of their neighborhoods. After overhearing this discussion, Plaintiff and another African-American teacher, who had also transferred to P.S. 193 pursuant to the ITP, claim to have stopped visiting the teachers' lounge.

---

disputed). Accordingly, for the purposes of this motion, Defendants' statement of undisputed facts is treated as undisputed only where it is not controverted by admissible evidence in the record.

*2. Incidents with P.S. 193 staff*

As outlined below, during her brief tenure at P.S. 193, and following the alleged discussion in the teachers' lounge discussed above, Plaintiff claims to have suffered a host of verbal and even physical altercations at the hands of certain Caucasian teachers and staff-members.

Plaintiff testified that Kristin Deodato, a Caucasion reading teacher at P.S. 193, intentionally collided with her on a school staircase, nearly knocking her down. In addition, Plaintiff claims that, after she discussed with Cimino problems she perceived with Deodato's teaching methods, Deodato refused to provide remedial reading workshops for Plaintiff's students. According to Plaintiff, when she informed Cimino that Deodato had unilaterally discontinued providing remedial classes for her students, no corrective action was taken— conduct she attributes to P.S. 193 administrators' race-based bias.

Plaintiff also testified that Martha Militano, a Caucasian math teacher at P.S. 193, exhibited further racial hostility by ignoring her at faculty workshops. In addition, Plaintiff testified about a confrontation on September 30, 2004 where, according to Plaintiff, Militano called her an "idiot" or "stupid" after Plaintiff inadvertently failed to hold a door which then closed on Militano. Militano, however, claimed that she simply but sarcastically remarked "thank you" as the door shut on her and that Plaintiff called her a "racist" in response.

In addition to the incidents discussed above, Plaintiff testified at her deposition about a confrontation with Larisa Beker, a Causcasian ESL coordinator at P.S. 193, who, according to Plaintiff, stated that the family of one of Plaintiff's students was "Euro trash." Plaintiff also testified that another Caucasian teacher, Elizabeth Hodorowski, became offended when Plaintiff suggested that one of Hodorowski's Caucasian students be evaluated for special education.

3

According to Plaintiff, Hodorowski retorted that two of Plaintiff's minority students should be evaluated for special education instead.

### 3. March 2004 auditorium incident

Plaintiff further complains of a verbal and physical altercation that occurred in the P.S. 193 auditorium in full view of her class. Plaintiff alleges that Karen Reala, a Caucasian secretary approached her in the auditorium and publically demanded to know whether Plaintiff had signed a disciplinary letter which had been given to her the previous day.[3] Plaintiff stated that she would not sign the letter without first consulting with her union representative. In response, Reala allegedly became combative and shouted at Plaintiff in front of the assembled students. Next, according to Plaintiff, she summoned Maryann Bassi, the Caucasian Assistant Principal at P.S. 193, and asked her to intervene. According to Plaintiff, however, rather than diffusing the public confrontation, Bassi escalated the situation by also berating Plaintiff and then physically poking her in the chest. By contrast, Bassi testified that Plaintiff was to blame for the disruptive scene in front of the students.

### 4. Plaintiff's allegations of corporal punishment

Plaintiff testified that, on June 4, 2004, approximately two-months after the auditorium incident, she witnessed a Caucasian school aide, Deborah Laveglia, physically abuse a P.S. 193 student. According to Plaintiff, Laveglia shoved the student with both hands, causing her to strike her head on a lunch table. Plaintiff testified that when she immediately reported the incident to Assistant Principal Bassi, specifically characterizing the episode as one of physical child abuse, Bassi sarcastically responded "one of *your* children?" Plaintiff testified that she

---

[3] It appears from the record that the disciplinary letter at issue pertained to Plaintiff's prior failures to timely provide Cimino with her lesson plan book. (*See* Defs.' Notice of Mot., Ex. P.)

interpreted Bassi's words and tone to suggest that the student, who is white, could not be her actual child because Plaintiff is black.

According to Plaintiff, when Cimino learned of the allegations against Laveglia, he failed to report the incident as required by DOE protocol. Moreover, she claims that, in further violation of DOE procedures, Cimino failed to interview her concerning her allegations. As a result, Plaintiff reported the incident to the Board of Education Office of Special Investigation. Thereafter, on June 17, 2004, an investigator contacted Cimino and requested that he properly investigate the allegations against Laveglia. Cimino submitted a report the following day finding that, although Laveglia had "nudged" the student, she had not been physically harmed. It is not disputed, however, that Cimino never interviewed Plaintiff, *i.e.*, the source of the report.

### C. Plaintiff's request to transfer is denied

Approximately three months after the commencement of the school year, Plaintiff, citing stress and other medical issues, requested a transfer to a different position or school. Plaintiff's request was denied because, according to Cimino, the alternative position Plaintiff sought would have been more stressful than her then-current position. In addition, Cimino testified that he reminded Plaintiff that she voluntarily transferred to P.S. 193 via the ITP and, therefore, he expected her to remain at the School for the full year.

### D. Plaintiff's formal charges of discrimination and "unsatisfactory" rating

On June 7, 2004, Plaintiff filed a complaint with the DOE Office of Equal Opportunity ("OEO"). In her OEO charge, Plaintiff outlined her history at P.S. 193, complained of a disrespectful environment at the school, accused Cimino of favoritism toward Caucasian staff members, and requested a transfer. On June 15, 2004, Cimino rated Plaintiff's performance at P.S. 193 "unsatisfactory" in her annual performance review. On June 24, 2004, OEO informed

Plaintiff that she had failed to present sufficient evidence to support her allegations and closed her case.

On August 12, 2004, Plaintiff filed charges of discrimination with the New York State Division of Human Rights ("NYSDHR"). In her NYSDHR complaint, Plaintiff asserted that she had been subjected to disparate treatment and retaliation at P.S. 193, and that Cimino had intentionally precluded her from transferring to a different school.

### E. Section 3020-a hearing and Plaintiff's termination

On October 14, 2004, Plaintiff was administratively reassigned out of P.S. 193 and, on April 27, 2005, she was served with a total of fourteen disciplinary infractions. A disciplinary hearing was conducted by an Independent Hearing Officer ("IHO") pursuant to section 3020-a of the New York Education Law. The IHO concluded that some of the charges brought against Plaintiff were substantiated, that some charges were only partially substantiated, and that some charges were unsubstantiated by the evidence presented at the 3020-a hearing. The IHO ultimately determined however that a sufficient basis existed to support the termination of Plaintiff employment.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the pleadings, depositions, interrogatories, admissions, and affidavits demonstrate that there are no genuine issues of material fact in dispute and that one party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether a genuine issue of material fact exists, the evidence of the non-movant "is to be believed" and the court must draw all "justifiable" or "reasonable" inferences in favor of the non-moving party. *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)); *Brosseau v. Haugen*, 543 U.S. 194, 195 n.1 (2004). Nevertheless, once the moving party has shown that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*,'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original), and "may not rely on conclusory allegations or unsubstantiated speculation," *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (citing cases). In other words, the nonmovant must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. Where "the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to [its] case." *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993) (quoting *Celotex*, 477 U.S. at 322) (internal quotation marks omitted) (alteration in original). Thus, "[a] defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." *Allen v. Cuomo*, 100 F.3d 253, 258 (2d Cir. 1996) (citing *Anderson*, 477 U.S. at 247–48).

In discrimination cases, the merits typically turn upon an employer's intent, necessitating the exercise of abundant caution in granting summary judgment for the employer. *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008). Naturally, where an employer has acted with discriminatory intent, direct evidence of that intent will only rarely be available, thus "affidavits

and depositions must be carefully scrutinized for circumstantial proof, which, if believed, would show discrimination." *Id.* (quoting *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994)). Even in the discrimination context, however, a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment. *Id.*

## DISCUSSION

### A. Defendant City of New York

In her Complaint, Plaintiff asserts that "The New York City Board of Education has subsequently become an agency of the City of New York and is now known as The New York City Department of Education." (Compl. at 2 n.1.) However, Defendants correctly note that the City is a separate and distinct legal entity from DOE, Plaintiff's actual employer. It is well-settled that "the City cannot be liable for the acts of DOE or its employees." *Moore v. City of New York*, No. 08 Civ. 8879, 2010 WL 742981, at * 5, 2010 U.S. Dist. LEXIS 19183, at *15-16 (S.D.N.Y. Mar. 2, 2010); *see also Falchenberg v. New York City Dep't of Educ.*, 375 F. Supp. 2d 344, 347 (S.D.N.Y. 2005); *Fierro v. City of New York*, 591 F. Supp. 2d 431, 446 (S.D.N.Y. 2008) (rev'd in part on other grounds, 341 Fed. App'x 696 (2d Cir. July 27, 2009).)

As DOE—not the City—is the appropriate Defendant, and there being a clear identity of interest between the two, the City is dismissed and DOE substituted *sua sponte*. *See* Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party."); *see also Ciancio v. Gorski*, No. 98-CV-0714E, 1999 WL 222603, at *1, 1999 U.S. Dist. LEXIS 5136, at *3 (W.D.N.Y. Apr. 14, 1999) (citing *Cinemotion NV v. Lorimar-Telepictures Corp.*, 1989 WL 120083, at *6, 1989 U.S. Dist. LEXIS 11689, at *6 (S.D.N.Y. Oct. 5, 1989). In the analysis set forth below, the Court construes Plaintiff's claims against the City as if brought

against DOE. *Cf. Pinckney v. New York City Police Dep't*, Nos. 01-CV-2437, 01-CV-6515, 2005 WL 282870, at \*1 n.2, 2005 U.S. Dist. LEXIS 1651, at \*2 n.2 (E.D.N.Y. Feb. 3, 2005).

### B. Plaintiff's Section 1981 claims are dismissed

Plaintiff does not oppose that portion of Defendants' motion seeking dismissal of her claims brought against Cimino pursuant to 42 U.S.C. § 1981. (*See* Pl.'s Mem. at 2.) Moreover, Plaintiff has not demonstrated that she was a victim of racial discrimination because of any municipal policy, practice, or custom as required by *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690-95 (1978). Accordingly, Plaintiff's § 1981 claims are dismissed.

### C. Plaintiff's hostile work environment claim

To prevail on a hostile work environment claim a plaintiff must show that: (1) the work place was permeated with discriminatory intimidation, ridicule, and insult sufficiently severe or pervasive to alter the conditions of her work environment; and (2) a specific basis exists for imputing the conduct that created the hostile environment to the employer. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993); *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997). The plaintiff must demonstrate that her work environment was both objectively and subjectively hostile. *See Gregory v. Daly*, 243 F.3d 687, 691-92 (2d Cir. 2001). In other words, the conduct must be severe or pervasive enough to reasonably perceive the environment as hostile or abusive, and the plaintiff must in fact perceive such an environment. *Schwapp*, 118 F.3d at 110.

Courts consider the totality of the circumstances to determine whether a work environment is hostile. *Harris*, 510 U.S. at 23. These circumstances include the discriminatory conduct's frequency and severity, whether the conduct is physically threatening or humiliating, and whether the conduct unreasonably interferes with the plaintiff's work performance. *Id.* Furthermore, to establish a hostile work environment claim a plaintiff must show "more than a

9

few isolated incidents of [discriminatory] enmity." *Snell v. Suffolk County*, 782 F.2d 1094, 1103 (2d Cir. 1986) (citations omitted). A "'mere utterance of an . . . epithet which engenders offensive feelings in an employee' does not sufficiently affect the conditions of employment to implicate Title VII." *Harris*, 510 U.S. at 21 (quoting *Meritor Sav. Bank, FSV v. Vinson*, 477 U.S. 57, 67 (1986)) (citation omitted; alteration in *Harris*).

Plaintiff has failed to demonstrate severe or pervasive conduct sufficient to establish a prima facie hostile work environment claim. Assuming *arguendo* that Plaintiff experienced some form of derogatory speech at P.S. 193, she has failed to establish that such incidents were sufficiently severe and pervasive. *See Schwapp*, 118 F.3d at 110 ("[f]or racist comments, slurs, and jokes to constitute a hostile work environment, there must be more than a few isolated incidents of racial enmity . . . there must be a steady barrage of opprobrious racial comments") (quotations and citations omitted). Specifically, the incidents on which Plaintiff primarily relies—the conversation in the teachers' lounge;[4] Cimino's reference to Temple transferring to P.S. 193 through the ITP; and Bassi's sarcastic remark—fall far short of that which is required to establish the sort of severe or pervasive discriminatory atmosphere sufficient to withstand summary judgment.[5] Indeed, Plaintiff's allegations of personal slights and consistent rudeness or disrespect by P.S. 193 personnel have consistently been held insufficient to trigger hostile work

---

[4] As explained *supra*, it is undisputed that the alleged conversation in the teachers' lounge was neither directed at Plaintiff nor concerned her protected class. Rather, Plaintiff testified that she simply overheard the alleged comments.

[5] Likewise, Plaintiff's confrontations with other P.S. 193 colleagues did not objectively alter the conditions of her employment so as to create a hostile work environment. *See Harris*, 510 U.S. at 21. Plaintiff claims her colleagues ignored and disrespected her. However, she offers scant evidence beyond her own conclusory allegations to suggest that her colleagues acted with discriminatory intent. *See Lizardo v. Denny's, Inc.*, 270 F.3d 94, 104 (2d Cir. 2001) (affirming summary judgment for defendants where "[p]laintiffs ha[d] done little more than cite to their mistreatment and ask the court to conclude that it must have been related to their race"). Moreover, even if the Court were to conclude that Temple's colleagues instigated confrontations with some discriminatory motive, these personal altercations do not amount to an abusive work place sufficient to establish a hostile environment claim. *See Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting *Oncale v. Sundower Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)) (Title VII "does not set forth 'a general civility code for the American workplace'").

environment protections under Title VII. *See, e.g., Stepheny v. Brooklyn Hebrew Sch. for Special Children*, 356 F. Supp. 2d 248, 264 (E.D.N.Y. 2005) (finding utterance of "white bitch" or variation five times over five months insufficient to withstand summary judgment); *Curtis v. DiMaio*, 46 F. Supp. 2d 206, 214 (E.D.N.Y. 1999); *Bolden v New York City Hous. Auth.*, No. 96 CIV 2835, 1997 WL 666236, at *2, 1997 U.S. Dist. LEXIS 16772, at *5 (S.D.N.Y. Oct. 27, 1997) (finding five offensive racial references by supervisor including word "nigger," over six weeks, insufficient as matter of law to establish hostile work environment). Finally, Plaintiff's allegations of excessive monitoring are insufficient to present a triable claim that she was subjected to a discriminatorily hostile environment at P.S. 193. *See, e.g., Montgomery v. Chertoff*, No. 03-CV-5387, 2007 WL 1233551, at *12, 2007 U.S. Dist. LEXIS 30519, at *32-33 (E.D.N.Y. Apr. 27, 2005) (citing cases and finding that "[e]xcessive scrutiny, without more, does not constitute an adverse employment action"). Accordingly, Defendants' motion for summary judgment with respect to Plaintiff's hostile work environment claim is granted.

### D. Plaintiff's disparate treatment claims

Claims of disparate treatment in employment are analyzed according to the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* "burden-shifting" inquiry, in the absence of direct evidence of employment discrimination, a plaintiff must first establish a prima facie case of discrimination by demonstrating that: (1) she is a member of a protected class; (2) she was qualified for the position at issue; (3) she was subjected to an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 567 (2d Cir. 2000). This burden is minimal and does not require specific evidence of discrimination. *Joseph v. Leavitt*, 465 F.3d 87, 90 (2d Cir. 2006).

11

If a plaintiff meets this burden, the defendant employer must then articulate a "legitimate, nondiscriminatory reason" for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802. To prevail, a plaintiff must then provide evidence that the employer's explanation is not true, but is instead merely a pretext to mask impermissible discrimination. *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 91 (2d Cir. 2001).

The ultimate burden to persuade the trier of fact "that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252 (1981). It is not enough for a plaintiff merely to create doubt that the defendant's stated reason was the real reason for discharging her. She must also put forth "evidence that would permit a rational factfinder to infer that the discharge was actually motivated, in whole or in part, by discrimination" on the basis of her race. *Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 561 (2d Cir. 1997). On a motion for summary judgment, the Court must examine "the entire record to determine whether the plaintiff could satisfy [her] 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff.'" *Schnabel v. Abramson*, 232 F.3d 83, 90, (2d Cir. 2000) (quoting *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 142 (2000)).

The Court finds that Plaintiff has established a prima facie case of discrimination based on disparate treatment. Plaintiff is a member of a protected class and she apparently enjoyed an unblemished performance record throughout the course of her many years of employment in the New York City school system. The first and second prongs of her prima facie case are therefore satisfied. As to the third element of her prima facie case, Plaintiff has also established that she was subjected to an adverse employment action in that she was subjected to formal disciplinary action that led to the termination of her employment.

Therefore, the next issue is whether the circumstances surrounding Plaintiff's termination give rise to an inference of discrimination. "One 'common and especially effective method' for [a plaintiff] to discharge this burden is to show 'that the employer treated a similarly situated employee differently.'" *McDonald v. Maimonides Medic. Cent.*, 99-CV-6849, 2002 WL 257818, at *5, 2002 U.S. Dist. LEXIS 2704, at *13 (E.D.N.Y. Jan. 3, 2002) (quoting *McGuinness v. Lincoln Hall*, 263 F.3d 49, 53 (2d Cir. 2001)). A plaintiff alleging disparate disciplinary treatment must establish that she was subjected to an adverse employment action "and that a similarly situated employee not in the relevant protected group received better treatment." *Carter v. New Venture Gear, Inc.*, 310 Fed. App'x 454, 457 (2d Cir. 2009) (quoting *McGuinness*, 263 F.3d at 53). To do so, a plaintiff must demonstrate that she was "similarly situated in all material respects to the individuals with whom she seeks to compare herself." *Shumway v. United Parcel Serv.*, 118 F.3d 60, 64 (2d Cir. 1997). "[T]he standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, rather than a showing that both cases are identical[,]" *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000), and "[w]hether two employees are similarly situated ordinarily presents a fact question for the jury." *Id.*; *see also Hargett v. Nat'l Westminster Bank USA*, 78 F.3d 836, 839 (2d Cir. 1996) (noting that jury was asked to decided "similarly situated issue").

Plaintiff's disparate treatment allegations in this case center on the two confrontations with Caucasian co-workers after which she was subjected to formal discipline, while the Caucasian co-workers were only informally admonished or not subjected to discipline at all. Each incident is considered in turn.

13

First, Plaintiff argues that the discipline Cimino imposed following her September 30, 2004 confrontation with Militano demonstrates that Caucasian employees at P.S. 193 received more favorable treatment than did employees in Plaintiff's protected class. At his deposition, Cimino testified that he conducted a "disciplinary conference" following the incident and considered statements from both Plaintiff and Militano. (*See* Pl.s Opp., Ex. 7: Deposition of Frank Cimino ("Cimino Dep.") at 215.) Cimino further testified that he concluded that Plaintiff's conduct warranted an official disciplinary letter to her personnel file while Militano's conduct warranted only informal admonishment. (*Id.*) According to Plaintiff, the fact that Cimino did not personally witness this altercation and determined that both her and Militano had acted inappropriately, yet only subjected her to formal disciplinary action, establishes an inference of discrimination.

Second, Plaintiff asserts that the March 2004 auditorium incident discussed above, and resulting discipline, provides further evidence that African-American teachers at P.S. 193 received less favorable treatment than Caucasian staff members. The record indicates that shortly after the Plaintiff's confrontation with Reala and Bassi, Cimino—who had not personally observed the incident—convened a disciplinary conference after which he determined that Plaintiff had conducted herself in an insubordinate and unprofessional manner, although he conceded at his deposition that Reala's culpability was "open to interpretation." (*Id.* at 211-12.) Cimino came to this conclusion despite the fact that several of students present in the auditorium stated that they observed Bassi and Reala screaming at Plaintiff. As a result of the auditorium incident and Cimino's conclusion that Plaintiff had acted unprofessionally, another disciplinary letter was placed in Plaintiff's personnel file; yet neither Reala nor Bassi were subjected to any formal discipline whatsoever.

In this case, it is clear from the record that Cimino, as P.S. 193's principal, was responsible for the supervision of all teachers and staff at the school. (*See, e.g.*, Defs.' Notice of Mot. for Summ. J., Ex. L: Transcript of 3020-a Hearing ("Hr'g Tr.") at 625.) In addition, the record contains numerous instances where, after an incident at P.S. 193, Cimino would conduct disciplinary conferences and consider statements from the relevant parties, after which he would determine who was to blame for an incident, which disciplinary rules had been violated, and the degree of discipline to impose. (*See, e.g.*, Cimino Dep. at 214-15.) Although Cimino concluded after each incident discussed above that Plaintiff's conduct was more egregious than that of her comparators, factual issues concerning comparable conduct such as those presented in this case are appropriately resolved by a jury. *See Graham*, 230 F.3d at 42-43 (district court's conclusion on summary judgment that plaintiff was not similarly situated to comparators "improperly resolved a fact question"). Viewing the record in the light most favorable to Plaintiff, the Court concludes that a rational jury could find that Plaintiff and the coworkers discussed above were similarly situated and engaged in conduct of comparable seriousness, the consequences for which were then applied inconsistently. As such, the Court finds that Plaintiff has met her "minimal" burden and has established a prima facie case of discrimination based upon alleged disparate disciplinary treatment at P.S. 193.

Because Plaintiff has established a prima facie case, the burden shifts to Defendants to articulate a legitimate, non-discriminatory reason for their action. In this case, Defendants assert that Plaintiff's unprofessional and insubordinate conduct formed a legitimate basis for the discipline imposed upon her and the ultimate termination of her employment which stemmed from the formal disciplinary charges brought against her. In support, Defendants ask that the

Court afford dispositive weight to the findings and conclusions of the IHO. For the reasons set forth below, this Court declines to do so.

While the findings of a neutral arbitrator may constitute admissible evidence, see *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 60 n.21 (1974), such determinations are not preclusive of subsequent Title VII litigation. *See Tennessee v. Elliott*, 478 U.S. 788, 796 (1986); *see also Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 708 (2d Cir. 2001) ("[U]nreviewed decisions of state administrative agencies will not bar a subsequent *de novo* trial under Title VII in federal court."). However, the Second Circuit has held that where an arbitration determination follows an evidentiary hearing based on substantial evidence, a party opposing summary judgment must present strong evidence that: (1) the decision was wrong as a matter of fact—*e.g.*, new evidence exists not presented before the tribunal; or (2) the impartiality of the proceeding was compromised. *Collins v. N.Y. City Trans. Auth.*, 305 F.3d 113, 119 (2d Cir. 2002).

In this case, Plaintiff does not assert, and nothing in the record suggests, that the impartiality of the 3020-a hearing was compromised. However, in her submission in opposition to Defendants' motion, Plaintiff has submitted new evidence in the form of a sworn affidavit from the mother of the student involved in the incident with Laveglia that undermines testimony given by Cimino and that presents credibility issues that cannot be resolved on summary judgment.[6] Specifically, Cimino testified at both the 3020-a hearing and at his deposition in this

---

[6] In a footnote in their Reply brief, Defendants object to the affidavit submitted by the student's mother because Plaintiff failed to disclose her as a potential witness pursuant to Rule 26(a) or (e) of the Federal Rules of Civil Procedure. (*See* Defs.' Reply Mem. at 5 n.2). However, Defendants contentions of prejudicial unfairness are undermined by the fact that this witness's status as an individual with discoverable information stemmed directly from Cimino's testimony, who claims to have personally discussed the lunchroom incident involving Laveglia with her. In this regard, it is worth noting that Cimino was deposed on September 27, 2007 and that discovery remained open until at least March 12, 2009. (*See* Docket No. 49). There is nothing in the record to suggest that Plaintiff concealed this witness or her potential testimony from Defendants, and nothing precluded them from deposing her; indeed, following Cimino's deposition, Defendants contacted her regarding her daughter's upcoming deposition.

case that, as part of his investigation of Plaintiff's allegations of physical abuse, he contacted the student's parents to advise them of the incident and directed Laveglia to apologize to student's mother. (*See* Cimino Dep. at 137 ("I spoke to the child, I spoke to the parents, drew my conclusion [and completed the investigation.]"); *id.* at 139 ("[Laveglia] apologized to the mother and everyone was happy with that."); *see also* Hr'g Tr. at 1058 ("[W]e contacted the parents."). However, the student's mother flatly disputes that Cimino contacted her, or that Laveglia apologized to her for the incident. (*See* Aff. of Daniela Kuqi at ¶ 6 ("Both of [Cimino's] statements are false. Neither Mr. Cimino nor anyone else form [sic] P.S. 193 administration ever contacted me or [the student's] father to tell us about the incident where Ms. Laveglia pushed our daughter.))

In this case, the DOE charges, and much of the evidence presented at the 3020-a proceeding in support of those charges, arose from Cimino's conclusions that Plaintiff had acted unprofessionally and/or insubordinately at P.S. 193. Indeed, Cimino was the primary source of the formal disciplinary allegations lodged against Plaintiff that led to the 3020-a hearing and, consequently, the ultimate termination of her employment. Although the portion of Cimino's prior testimony that has been challenged in this action is unrelated to his testimony concerning Plaintiff's confrontations with her coworkers (*i.e.*, the basis for Plaintiff's disparate discipline allegations), it is inappropriate for this Court to speculate how the new evidence proffered by Plaintiff in this litigation might have affected the IHO's factual findings and ultimate conclusions at the 3020-a hearing. *See Alexander*, 415 U.S. at 60 n.21 ("[C]ourts should be ever mindful that Congress, in enacting Title VII, thought it necessary to provide a judicial forum for the ultimate

---

(*See* Docket No. 35 at 19, 22.) In any event, for the reasons discussed *supra*—specifically, the instances in which Plaintiff was formally disciplined following personal confrontations with P.S. 193 staff members who were not similarly charged with misconduct—the Court's conclusion that disputed issues of fact preclude summary judgment would be unchanged even absent the affidavit at issue. However, Defendants are directed to address any issues concerning the need for further discovery to Magistrate Judge Pollak.

resolution of discriminatory employment claims. It is the duty of courts to assure the full availability of this forum."). Accordingly, while the IHO's final determination certainly suggests that Plaintiff faces a challenging path at trial, the Court concludes that the findings in that forum are not dispositive of the disputed factual issues in this case—*i.e.*, whether or not Plaintiff was subjected to disparate treatment in violation of Title VII.

Finally, although Defendants have proffered legitimate, non-discriminatory reasons for their conduct, Plaintiff responds that the incidents of alleged disparate treatment presented to establish her prima facie case also demonstrate that Defendants' explanation for the termination of her employment was pretextual. The Second Circuit has stated that, "[a] showing that similarly situated employees belonging to a different racial group received more favorable treatment can also serve as evidence that the employer's proffered legitimate, non-discriminatory reason for the adverse job action was a pretext for racial discrimination." *Graham*, 230 F.3d at 43 (citing *Hargett*, 78 F.3d at 939); *see also id.* at 44 ("Only where overwhelming evidence exists that an employer acted for reasons other than discrimination will the proof submitted by the plaintiff as to similarly situated employees be negated.").

In addition to arguing that the examples of purported disparately imposed discipline discussed above demonstrate pretext, Plaintiff also asserts that the incident involving Laveglia provides further support for her allegations that Cimino engaged in a pattern of disparately favoring Caucasian employees at P.S. 193—*i.e.*, that he routinely overlooked misconduct committed by Caucasian employees, but would not hesitate to formally charge Plaintiff with disciplinary infractions. Finally, despite Defendants' proffered legitimate reason for Plaintiff's dismissal—*i.e.*, the conduct at issue at the 3020-a proceeding—the Court notes that the IHO

actually concluded that some of the allegations brought against Plaintiff were unsubstantiated or only partially substantiated by the evidence presented at the 3020-a hearing.

At this final stage of the *McDonnell Douglas* analysis "the governing standard is simply whether the evidence, taken as a whole, is sufficient to support a reasonable inference that prohibited discrimination occurred." *James v. New York Racing Ass'n*, 233 F.3d 149, 156 (2d Cir. 2000) (discussing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 (2000)). In sum, the Court finds that the incidents discussed above, taken together and viewed in the light most favorable to Plaintiff, present disputed issues of fact such that a reasonable jury could conclude that Plaintiff was subjected to disparate disciplinary treatment at P.S. 193. Accordingly, that portion of Defendants' motion seeking summary judgment with respect to Plaintiff's disparate treatment claims is denied.

### E. Plaintiff's retaliation claims

Title VII's anti-retaliation provision prohibits an employer from "discriminat[ing] against" an employee or job applicant because she has "opposed" a practice that Title VII forbids or has "made a charge, testified, assisted, or participated in" a Title VII "investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a). To establish a prima facie retaliation claim the plaintiff must show that: (1) she was engaged in a protected activity; (2) the employer knew of such activity; (3) the employer took adverse employment action against the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action. *See McMenemy v. City of Rochester*, 241 F.3d 279, 282-83 (2d Cir. 2001). Retaliation claims are also analyzed using the *McDonnell Douglas* framework. *McDonnell Douglas*, 411 U.S. at 792.

Defendants do not dispute that Plaintiff's administrative complaints constituted protected activity under Title VII nor that Plaintiff's negative evaluations, the disciplinary charges brought

against her, and the ultimate termination of her employment, constituted adverse employment actions. With regard to the second and third elements, however, Defendants contend that Plaintiff has failed to establish that Defendants knew about her OEO and NYSDHR complaints and, therefore, that she has not established the requisite causal connection between her protected activity and any adverse employment action.

The second prong of a plaintiff's prima facie case, however, requires only a showing of "general corporate knowledge" that a plaintiff has engaged in activity protected under Title VII. *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 116 (2d Cir. 2000) ("Neither this nor any other circuit has ever held that, to satisfy the knowledge requirement, anything more is necessary than general corporate knowledge that the plaintiff has engaged in a protected activity."); *see also Martinez v. New York City Dep't of Educ.*, No. 04 Civ. 2728, 2008 WL 2220638, at *11, 2008 U.S. Dist. LEXIS 41454, at *39-40 (S.D.N.Y. May 27, 2008) (second element satisifed where "[a]lthough ... Plaintiff has proffered no evidence that [public school principal that supervised Plaintiff] personally knew about Plaintiff's protected activity ... there is no dispute that [DOE], as a corporate entity and Defendant in this case, knew about Plaintiffs protected activity.") (citing *Gordon*, 232 F.3d at 116 (2d Cir. 2000).)

Here, it is undisputed that on June 7, 2004 Plaintiff filed a complaint with DOE's Office of Equal Opportunity and has therefore satisfied the second prong of her retaliation claim with respect to her OEO complaint. *See Martinez*, 2008 WL 2220638, at *11, 2008 U.S. Dist. LEXIS 41454, at *39-40. Next, the record contains sufficient evidence to establish that, prior to Plaintiff's removal from P.S. 193, at least Cimino was aware that Plaintiff had filed a complaint with the NYSDHR. (*See, e.g.*, Defs.' Notice of Mot., Ex. X (Letter dated October 6, 2004 from Cimino to Plaintiff referencing her NYSDHR claim); *see also* Hr'g Tr. at 1083-84 ("I know that

[Plaintiff] has always written things to the [NYSDHR and her attorney]."].)  Therefore, Plaintiff has satisfied the second prong of her retaliation claim with respect to her NYSDHR complaint.

As to the third element of her prima facie case, a plaintiff can prove causation "either (1) indirectly, by showing that protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against plaintiff by the defendant." *Gordon*, 232 F.3d at 117 (citation omitted); *see also Gorman-Bakos v. Cornell Co-op Extension of Schenectady County*, 252 F.3d 545, 554-55 (2d Cir. 2001).  Where, as here, the "mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action" is the basis for a retaliation claim, the proximity must be "very close." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001).  However, there is no "bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." *Gorman-Bakos*, 252 F.3d at 554.

Plaintiff filed her OEO complaint on June 7, 2004.  Eight days later, she received an "unsatisfactory" overall performance evaluation for the school year, despite receiving "satisfactory" ratings with regard to all substantive teaching duties for which she was reviewed.  Aside from Cimino's testimony that he was unaware that Plaintiff had filed an OEO complaint, Defendants cite only an email dated June 22, 2004 informing him that the charges had been dismissed to support the proposition that he lacked knowledge of Plaintiff's complaint.  However, as Plaintiff correctly observes, this email only demonstrates that Cimino learned that the OEO complaint had been dismissed; it does not, however, establish that Cimino was unaware that it had been filed in the first place.  With regard to her NYSDHR complaint, it is undisputed

21

that Plaintiff was removed from P.S. 193 to await formal 3020-a charges approximately two months after she filed her NYSDHR charge. In light of the above, the Court concludes that Plaintiff has established a prima facie case of retaliation with respect to both her OEO and NYSDHR complaints. *See, e.g., Ashok v. Barnhart*, 289 F. Supp. 2d 305, 315 (E.D.N.Y 2003) ("a period of only two months between a protected activity and an adverse action may permit a reasonable jury to find the acts to be temporally proximate and causally related").

Because Plaintiff has established a prima facie case of retaliation, the burden shifts to Defendants to articulate a legitimate, non-discriminatory reason for their challenged conduct. As with Plaintiff's disparate treatment claims, Defendants invoke Plaintiff's conduct as found by the IHO following the 3020-a hearing as a legitimate, nondiscriminatory basis for her termination. However, for the reasons stated earlier, the Court finds that issues of fact pertaining to alleged disparate treatment at P.S. 193, as well as the new evidence disputing Cimino's testimony at both the 3020-a hearing and at his deposition preclude summary judgment in this case. Therefore, the Court concludes that Plaintiff has demonstrated genuine issues of material fact as to whether she was retaliated against with respect to her OEO and NYSDHR complaints. Accordingly, that portion of Defendants' motion seeking dismissal of Plaintiff's retaliation claims is denied.

## CONCLUSION

For the foregoing reasons, it is ORDERED that Defendants' motion for summary judgment is GRANTED in part and DENIED in part. Plaintiff's hostile work environment and 42 U.S.C. § 1981 claims are DISMISSED. As to Plaintiff's disparate treatment and retaliation claims, however, Defendants' summary judgment motion is DENIED and those claims will proceed toward trial.

The parties are referred to the assigned Magistrate Judge, the Honorable Cheryl L. Pollak, for purposes of preparing a Joint Pretrial Order and addressing any other pretrial issues requiring Judge Pollak's attention.

SO ORDERED.

Dated: Brooklyn, New York
      September    , 2010

ROSLYNN R. MAUSKOPF
United States District Judge